EILEEN M. PASKE, Plaintiff-Appellant, v. JAMES M. GREEN, D.D.S., Defendant-Appellee.

First District (2nd Division) No. 85—0658

Opinion filed March 25, 1986.—Rehearing denied April 22, 1986.

Jeffrey Dean Lewis, Ltd., of Chicago, for appellant.

David A. Kanter and Ruth E. Van Demark, both of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff Eileen M. Paske filed a complaint against defendant James M. Green, D.D.S., her former dentist, claiming negligence, breach of contract, and breach of warranty. On defendant's motion, the trial court dismissed the action based on the applicable statute of limitations. Plaintiff appeals, arguing that the trial court erred in determining, as a matter of law, that her complaint was time-barred.

On December 31, 1981, plaintiff filed a two-count complaint against defendant dentist. The first count, alleging dental malpractice, stated that plaintiff employed defendant from 1974 through 1978 to perform various work on her teeth, including bridgework and treatment of her gums. Plaintiff claimed that the work performed by defendant was negligent and led to the loss of her dental bone structure, caused her to undergo periodontal treatment, and suffer a degenerative gum disease. Plaintiff also claimed that because of the negligent work performed by defendant, she had to suffer through nearly complete removal of the bridgework and undergo much dental work of a corrective nature. Plaintiff alleged that she did not discover

defendant's negligence until 1980.

The second count, alleging breach of warranty, stated essentially identical facts but also claimed that defendant "expressly and impliedly warranted and contracted to render to plaintiff for valuable consideration, proper treatment, advice, and care in conformance with proper standards which the plaintiff relied upon."

Defendant filed an answer and affirmative defense, in which he essentially denied plaintiff's allegations and asserted that plaintiff's complaint was precluded by the applicable statute of limitations. Thereafter, on February 4, 1982, defendant submitted interrogatories to plaintiff in which plaintiff was asked whether she had been treated by another dentist since the alleged negligence. Plaintiff responded that commencing on March 18, 1980, she began going to a Dr. Donald Grubman. Dr. Grubman performed extensive dental work on plaintiff, including the removal of both upper and lower left and right bridges installed by defendant and the repair of other bridgework installed by defendant.

On July 14, 1983, defendant took plaintiff's deposition. Thereafter, on July 17, 1984, defendant filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), claiming that plaintiff's deposition showed that she either knew or reasonably should have known of defendant's negligence as of May 1978, the last date that plaintiff saw defendant. In applying the two-year "discovery rule" to the instant injury, defendant alleged that because plaintiff knew or should have known of her injury in May 1978, the statute of limitations had run well before she filed her suit on December 31, 1981.

I

The applicable statute of limitations at the time of the filing of the complaint provided:

"Actions for damages for an injury to the person *** shall be commenced within two years next after the cause of action accrued." (Ill. Rev. Stat. 1981, ch. 83, par. 15, now Ill. Rev. Stat. 1983, ch. 110, par. 13—202.)

However, when the patient is not aware of the injury during the two-year period, the limitation period does not begin to run until he or she learns of the injury. *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, 40, 262 N.E.2d 450.

In *Roper v. Markle* (1978), 59 Ill. App. 3d 706, 375 N.E.2d 934, the court clearly established two conditions which must be met before the statute begins running: (1) actual or constructive knowledge of

both a physical problem; and (2) that someone is or may be at fault for its existence. (59 Ill. App. 3d 706, 713, 375 N.E.2d 934.) this "discovery rule" of *Roper* was followed in *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 421 N.E.2d 869, where the court noted:

"In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact. [Citation.]" (85 Ill. 2d 146, 156, 421 N.E.2d 869.)

The court recognized that in certain situations a question of fact may not be present: "Where it is apparent from the undisputed facts, however, that only one conclusion can be drawn, the question becomes one for the court." *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.

Plaintiff contends that it was error to dismiss her complaint because a question of fact remained as to when plaintiff knew or should have known both of her injury and that defendant could have been the cause of injury. Defendant responds that the court may determine this issue as a matter of law in the proper circumstances.

■■ We agree with defendant's proposition. However, the only circumstance in which such a determination can be made is "[w]here it is apparent from the undisputed facts *** that only one conclusion can be drawn." *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.

Defendant referred to plaintiff's deposition for support of his argument that as a matter of law plaintiff knew or reasonably should have known both that she suffered an injury and that defendant could have been the cause of the injury over two years before filing her complaint. Defendant also makes repeated reference to plaintiff's deposition on appeal. However, as noted by plaintiff, her "unhappiness about the shape, the feel, the color and the texture of her bridgework does not amount to knowledge of professional malpractice." Defendant also refers to plaintiff's deposition where she complained that her gums were painful and "they were all inflamed. They were all swollen. They used to bleed constantly."

It appears, as plaintiff argues, that defendant would have the court equate discomfort and dissatisfaction with knowledge that plaintiff suffered an injury at the hands of defendant. The record does not support such a conclusion and in fact supports the conclusion that plaintiff was neither aware that she suffered an injury nor that defendant could have been the cause prior to 1980. When discussing her dissatisfaction with the bridgework in general, plaintiff stated

that when she voiced a complaint as to their color to defendant, "He said that that was the lightest that he could do; that they were matching my natural teeth, and they weren't." After the completion of the bridgework, plaintiff's gums began to bleed. Defendant then gave plaintiff acid treatments to "correct" her gum problem. Plaintiff stated that defendant told her that the acid treatments would "cure" the gums, although he never told her why her gums were bleeding. Plaintiff consequently thought that her gum problem "came with the bridgework," and "was something [she] just had to live with." For that reason, she did not stop going to defendant but continued her treatments because she thought defendant "was going to rectify [her gum problems]." She finally stopped going to defendant in 1978, after having acid treatments approximately every six months from 1974 to 1978, because she thought "what more could he do for me."

Her gums remained in the same condition from 1978 until 1980, and she did not see another dentist during this period because she "thought [she] had to live with [her gum problems]." When she finally went to another dentist on the recommendation of a friend who was a dental assistant, she was informed that the condition of her mouth was "terrible" and that most, if not all, of her bridgework "had to come out." After being informed by Dr. Grubman that the cause of her gum problems was that "the top parts of [her bridgework] were pushing up against the gums," she could discern what her problems were.

Plaintiff's deposition testimony reveals that she neither was aware that she suffered an injury nor that defendant could have been the cause until she went to Dr. Grubman in 1980. Although the record shows that plaintiff suffered discomfort and dissatisfaction with her bridgework, the record also indicates that plaintiff equated these problems with bridgework in general.

Furthermore, defendant's statements that the bridgework was the best he could do and that plaintiff's gum problems would be "cured" by acid treatments support the conclusion that plaintiff was not aware she had suffered an injury until she visited Dr. Grubman in 1980. Therefore, it does not appear, as a matter of law, that only one conclusion can be drawn from the evidence and that plaintiff either knew or should have known that she suffered an injury more than two years before filing her complaint. Thus, the trial court improperly dismissed the complaint.

## II
Count II of plaintiff's complaint alleges in part:

"3. That prior to any treatment, the Defendant expressly and impliedly warranted and contracted to render to the Plaintiff for valuable consideration, proper treatment, advice, and care in conformance with proper standards which the Plaintiff relied upon.

4. That Defendant breached his warranties by failing to provide care, treatment, and advice consistent with the normal and usual standards of professional dental care in this community."

The allegations in this case are similar to the allegations in *Carroll v. Grabavoy* (1979), 77 Ill. App. 3d 895, 396 N.E.2d 836. Concluding that the complaint did not state a cause of action for breach of warranty, the court held: "The language used was employed to describe the treatment to be provided by the dentist as a part of his general obligation to treat the plaintiff with the reasonable skill required of his profession." 77 Ill. App. 3d 895, 901, 396 N.E.2d 836.

■■ This case does not come within the purview of *Cirafici v. Goffen* (1980), 85 Ill. App. 3d 1102, 407 N.E.2d 633, where the court held that a complaint stated a cause of action for breach of warranty, without alleging a special consideration, where the complaint alleged:

"*** plaintiff, during a visit to her dentist, *** was examined for a complaint of ill-fitting dentures. During defendant's examination, X rays of plaintiff's existing teeth and related bone structure were taken. He then allegedly induced her to permit him to install dental implants which, he purportedly told her, would eliminate the difficulties she was having with her dentures, and said that she would be able to eat 'corn on the cob' and other foods for which natural teeth are particularly suitable. Plaintiff agreed to the operations and paid defendant *** for implant services rendered ***. The implants were maintained in plaintiff's mouth from about May 3, 1974, until December 2, 1976, when defendant extracted them, acknowledging that they were a failure. He replaced them with a denture for which he charged plaintiff an additional $635. During the entire period in which plaintiff maintained the implants, they were loose, painful and prevented her from eating solid foods. ***" (85 Ill. App. 3d 1102, 1102-03, 407 N.E.2d 633.)

Distinguishing *Grabavoy*, the *Cirafici* court stated:

"The *Grabavoy* court held that the language used there was employed to describe the treatment to be provided by the dentist as a part of his general obligation to treat the patient with the reasonable skill required of his profession. Under the facts of the case before us, the statements made to plaintiff extend

significantly beyond the suggestion that the implants would 'be attractive, fit well or be pleasing to the plaintiff' and appear to be express promises to effect a specific result. Plaintiff here should be permitted an opportunity to prove her case, if she can, without the necessity of pleading or proving a separate consideration for the promise." 85 Ill. App. 3d 1102, 1107-08, 407 N.E.2d 633.

Therefore, we conclude that the trial court correctly dismissed count II of plaintiff's complaint.

Accordingly, the judgment of the circuit court of Cook County dismissing count I is reversed, and the order dismissing count II is affirmed.

Reversed in part; affirmed in part.

HARTMAN and SCARIANO, JJ., concur.